## SIMS & JONES *vs.* KNOX.

1. If the hirer of a slave is not bound by his contract to pay for medical services rendered the slave, and such services are rendered at the instance of the owner, he and not the hirer is responsible for them.

2. Where the contract for the hire of a slave specifies merely the time, and the price agreed to be paid, the law will imply the obligation on the part of the hirer to furnish suitable clothing and provisions, and medical attention in case of sickness; but a stipulation in the contract that he shall provide clothing and board will be construed as limiting his liability to what is expressed.

ERROR to the Circuit Court of Montgomery. Tried before the Hon. Thos. A. Walker.

THIS was an action of assumpsit by the plaintiffs against the defendant in error to recover for medical services rendered by them to a slave by the name of William. It appears by the bill of exceptions that the slave was hired by the agent of one Drish, who resided in Tuscaloosa, to the defendant, for the year 1848, and that the services were rendered during that year. The entire terms of the hiring were contained in a note given by the defendant, of which the following is a copy: "I have this day hired from John R. Drish, of Tuscaloosa, his boy William for the balance of this year, 1848, at the rate of six hundred dollars per annum, and do further agree to find said boy William in summer and winter clothing and his board.—Montgomery, 21st January 1848.—WILLIAM KNOX." It was admitted that the services of the plaintiffs were not rendered at the request of the defendant or by his authority, but it was proved that the slave was in the spring or summer of 1848 extremely ill with the brain fever at the house of one Norment, in Montgomery, in which city both the plaintiffs and the defendant resided, and that his case was such as to render medical attention necessary; and the evidence conduced to show that the defendant knew that the plaintiffs were attending him. The defendant introduced in evidence a note addressed by Dr. Sims, one of the plaintiffs, to Mrs. Knox, wife of the defendant, in reference to a visit paid the slave by a Dr. Ulrich, at her request, in which Dr. Sims says, "there seems to be a misunderstanding on your part as to the agency of Dr. Drish's boy William, who you are perfectly aware has been sick for the last three weeks at Mr. Norment's. The Dutch doctor (Dr. Ulrich) visited him yesterday without my knowledge or consent. I called on him afterwards to ascertain the motive of his interference, and he stated that you had told him to do so, and that Mr. Knox was the agent of the the negro. I would beg leave most respectfully to inform you that I was sent for to attend the boy William at his own request, and the consent of his real agent, Mr. Pfister, and that his master, Dr. Drish, has written to Mr. Norment expressing his satisfaction at the same," &c. This was substantially all the evidence in the case, and it was admitted by the counsel on both sides that the testimony was free from conflict.

The court charged the jury that if they believed all the evi-

dence, they should find for the defendant, to which charge the plaintiffs excepted and now assign it as error.

T. & J. WILLIAMS, for the plaintiffs in error:

1. The owner of a hired slave is not bound to pay a physician employed by hirer to attend the slave.—Meeker v. Childress, Minor's R. 109.

2. The hirer of a slave is liable for medical services, in the absence of proof that the owner by contract should be responsible.—Gibson v. Andrews, 4 Ala. 66;—and see Hogan v. Carr & Anderson, 6 ib. 471.

3. The court should have refered it to the jury to say whether Knox knew that the plaintiffs were attending the sick negro, and therefore there was error in the charge as given.

4. The plaintiffs were entitled to recover, at least to the time when Ulrich was sent round by Mrs. Knox.

ELMORE & YANCEY, for the defendant:

The bill of exceptions shows that it was admitted by the attornies for both plaintiffs and defendant in the court below, that there was no conflict in the testimony.

When there is no conflict in the testimony, the court may instruct the jury that, if they believe all the facts in evidence, they must find in the manner which the court may direct.— Henderson v. Mabry, 13 Ala. 713; Paul v. Meek, 6 ib. 653; Lindsay v. Lindsay, 11 Verm. 621; Sims v. Sims' Adm'r, 2 Ala. 117; Farmers' Bank v. Duvall, 7 Gill & Johns. 78; Sneed v. Creatte, 1 Hawk's, 309.

If in the opinion of the court the plaintiff's evidence, though all be true, does not tend to prove his case, it is its duty so to instruct the jury.—Malson v. Fry, 1 Watts, 433; Perry v. Clarke, 5 How. Miss. 495.

The Supreme Court will not reverse, even granting there was error in the charge, if it appear by the record that the party could not recover.—Mayor, &c. v. Emanuel et al. 9 Port. 403; Brock v. Younge, 4 Ala. 584.

The facts, which are fully set out in the bill, show that plaintiffs were not entitled to recover of the defendant—

1. Because defendant, by his contract, was not liable to fur-

nish medical aid to the boy.—Law Lib., vol. 50; Broom's Legal Maxims, marg. p. 278; Barnes v. Blair, 16 Ala. 71.

2. Because, if he was liable, he did not request plaintiffs to render those services ; and knew nothing of them.

3. Because plaintiffs were employed by Dr. Drish, and refused to acknowledge any authority in defendant to employ medical aid for him.

The facts set out did not tend to prove the case of plaintiffs. See reasons *supra*.

When there is an express contract between parties, none can be implied.—Grimman v. Legge, 8 B. & C. 326.

DARGAN, C. J.—It is the settled law of this State, that the hirer of a slave for a specified time, where no agreement to the contrary is made, is responsible for medical services rendered the slave, during the period for which he was hired.—Gibson v. Andrews, 3 Ala. 66; Hogan v. Carr & Anderson, 6 ib. 471; Meeker v. Childress, Minor R. 104. And even, when by the contract of hiring the owner expressly or impliedly stipulates that he would provide the necessary medical aid for the slave, there might be cases, in which it would be the duty of the hirer to employ medical assistance upon his own responsibility, looking to the owner for indemnity. For instance, if the owner was at a distance, having no other person to represent his interest than the hirer, and medical services could not be procured on the credit of the owner, shall the slave be permitted to perish for the want of medical assistance? In such a case, the laws of humanity would demand of the hirer to provide the proper medical aid upon his own credit, if it could not be otherwise done. But it is perfectly clear, that if the hirer is not bound by his contract to pay for medical services rendered the slave, and during the term of hire such services are rendered at the instance of the owner, then the owner alone and not the hirer is responsible for them. By these general rules, let us test the facts of this case. The only evidence of the contract of hiring consisted of an instrument in writing in the following language : "I have this day hired of John R. Drish, of Tuscaloosa, his boy William, for the balance of the year 1848, at the rate of six hundred dollars per annum, and do further agree to find said boy William in summer and winter clothing, and his board."

This instrument was signed by the defendant, Knox, and bears date the 21st January 1848.

If the contract of hiring had contained no stipulation, except the time for which the slave was hired, and the price agreed to be paid, then it is clear that the law would have implied the obligation on the part of the hirer to have provided him with suitable clothes and provisions, and also medical attention in case of sickness. But this contract expressly provides, that Knox should furnish clothes and board. Why express some of the implied obligations and omit others? We can conceive of no other reason or motive that the parties had, except to limit the liability of the hirer. If we give not this construction to the contract, then no legal effect whatever can be given to the stipulation to furnish the boy with clothes and board. That obligation would have resulted from the general liability of the hirer, and the insertion of it in the contract must have been intended to limit the responsibility of Knox. On the principle of *expressio unius exclusio alterius*, this, we think, is the proper construction of the contract. Consequently, Knox was not bound, as between him and Drish, to pay for medical attention rendered the boy. Having attained this conclusion, the next inquiry is, on whose credit, and at whose request, were the services rendered? It is admitted by the record that the plaintiffs were not requested by Knox to render any medical service to the slave, and we think it clear from the letter of Dr. Sims, that he considered himself employed by Drish, the owner, and if so, it must have been on his credit. Knox was not bound, as between himself and Drish, to furnish medical attention. Drish by his contract reserved that duty to himself, and the plaintiffs considered that they were employed by the agent of Drish; they must then look to Drish, and not to Knox, for payment. As we come to the conclusion that this is the legal effect of the evidence, there is no error in the charge, of which the plaintiffs can complain, and the judgment must be affirmed.